1

2

3

4

5            UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
6                      AT SEATTLE

7  DONALD MORRIS LEE,

8                        Petitioner,          Case No. C14-5309-RSL-MAT

9         v.
                                              REPORT AND RECOMMENDATION
10  PATRICK GLEBE,

11                        Respondent.

12

13            <u>INTRODUCTION AND SUMMARY CONCLUSION</u>

14        Petitioner is a state prisoner who is currently confined at the Stafford Creek Corrections

15  Center in Aberdeen, Washington.   He seeks relief under 28 U.S.C. § 2254 from a 2012

16  Snohomish County Superior Court judgment and sentence.   Respondent filed a timely answer to

17  petitioner's federal habeas petition and submitted relevant portions of the state court record for

18  the Court's review.   Petitioner filed a response to respondent's answer.   Petitioner has also filed a

19  number of other motions which are pending at this time.[1]   This Court, having carefully reviewed

20  the petition, the briefs of the parties, the state court record, all of petitioner's pending motions,

21  and the balance of the record, concludes that petitioner's federal habeas petition should be

22  _____

23        [1]  Specifically, petitioner has filed a motion to correct sentence (Dkt. 31), a motion to modify/terminate an
   order for protection (Dkt. 32), a motion to resubmit all previously stricken motions (Dkt. 33), a motion for release
   (Dkt. 38), and a motion to dismiss co-defendants (Dkt. 39).

REPORT AND RECOMMENDATION
PAGE - 1

dismissed with prejudice and all of petitioners pending motions should be stricken as moot.

FACTUAL/PROCEDURAL BACKGROUND

On March 19, 2012, petitioner pled guilty in Snohomish County Superior Court to charges of child molestation in the first degree, rape of a child in the third degree, and communication with a minor for immoral purposes via electronic communication. (*See* Dkt. 28, Exs. 2, 3.) Petitioner did not file a direct appeal.

In August 2012, petitioner filed a motion to withdraw his guilty plea in Snohomish County Superior Court. (*Id*., Ex. 4.) Petitioner identified the following "claims" in his motion: (1) oppressive confinement; (2) ineffective counsel; (3) denial of civil rights under color of law; (4) government misconduct; (5) malicious prosecution; (6) abuse of warrants; and, (7) excessive sentencing. (*See id*., Ex. 4 at 2-3.) In December 2012, the motion was transferred to the Court of Appeals for consideration as a personal restraint petition. (*See id*., Ex. 5.) Petitioner appealed the Superior Court's order transferring his motion to the Court of Appeals for consideration as a personal restraint petition. (*See id*.) The Court of Appeals rejected petitioner's objection to the transfer and dismissed both the appeal and the personal restraint petition. (*Id*., Ex. 7.)

Petitioner next filed a motion for discretionary review in the Washington Supreme Court. (*Id*., Ex. 8.) Petitioner identified the following issues for review in his motion to the Supreme Court:

> (1)  All four of these terms are met in my case, but I am not an eloquent attorney, nor capable of expressing clearly my meaning.  I need a lawyer, to have legal representation is a constitutional right.  The rest of the terms of dismissal are grossly overstated & wrong.  Evidence <u>was</u> presented.  The courts chose to ignore it.

REPORT AND RECOMMENDATION
PAGE - 2

(2)  Restating endlessly that "Donald Lee pleaded guilty" is a nonsensical argument in a case requesting a reversal of that plea.  In no instance did the court or prosecution reject this claim.  The facts aren't denied by the state, thus I hold that the statements I made be accepted as undisputed.

(3)  The court refused to communicate, to grant indigency, and to allow an attorney in a case involving a life sentence.  There can be no more clear need for representation than in such cases.

(Dkt. 28, Ex. 8 at 2-3.)

Petitioner also provided the following statement of his case:

As claimed in my appeal and CrR 7.8 motions, affidavits, and subsequent motions; to include the fact that Trueblood clearly failed to represent her client when she substituted an amended plea to the court without her clients (Mr. Lee) knowledge, instructing him to sign it without reading it while before the judge and while being (illegible).

Requests for evidence, records, and statements have been ignored or denied.  I cannot afford to "repurchase" my discovery that Trueblood holds/held.

Trueblood has failed to appeal, to send any documents, or to enable my case in any way.

(*Id.*, Ex. 8 at 3.)

Petitioner offered the following argument as to why review should be accepted:

The district one court abused its discretion, and sidestepped many notable instances of law and of procedure to issue a bald denial "et al".

Such a blanket dismissal indicates a refusal to consider the merits, and prejudice of the court.

Appeals refused to consider indigency, counsel, abuse of discretion in 7.8 to PRP conversion, records requests, urgency, and all other facts unrelated to the validity of the CrR 7.8.

(*Id.*, Ex. 8 at 4.)  Petitioner submitted an Affidavit of Facts to the Washington Supreme Court in conjunction with his motion for discretionary review in which he detailed his complaints about his attorney and denied having committed the crimes with which he was charged.  (Dkt. 28, Ex.

REPORT AND RECOMMENDATION
PAGE - 3

8 at 6-8.)

Petitioner next submitted an "answer" to the Supreme Court which was initially rejected for filing but which was subsequently added to petitioner's motion for discretionary review. (*Id.*, Ex. 8 at 16-47.)  Petitioner's answer, which was not a model of clarity, appeared to challenge various portions of the Court of Appeals' order dismissing his personal restraint petition and his consolidated appeal, to respond to arguments made by the state in its motion to transfer petitioner's motion for relief from judgment to the Court of Appeals, and to argue that the state was in "default" because it failed to adequately examine the merits of his claims. (*Id.*, Ex. 8 at 21-29.)  Petitioner also submitted a "brief" which was apparently accepted by the Supreme Court for filing. (*Id.*, Ex. 9.)  In that brief, petitioner asserted his innocence of the charges to which he pled guilty and attributed his decision to plead guilty to misrepresentations made by his attorney. (*Id.*)

On December 5, 2013, the acting commissioner of the Washington Supreme Court issued a ruling denying petitioner's motion for discretionary review. (*Id.*, Ex. 10.)  On April 2, 2014, the Washington Supreme Court denied a motion by petitioner to extend time to file a motion to modify the commissioner's ruling. (*Id.*, Ex. 11.)  Petitioner now seeks federal habeas review of his convictions.

## GROUNDS FOR RELIEF

Petitioner identifies 42 grounds for relief in his federal habeas petition:

GROUND ONE:  My children were arrested.  I plead guilty in an attempt to spare them, which was promised. . . .  Trueblood offered to motion to dismiss charges against my sons if I plead guilty, I felt I had no choice.

GROUND TWO:  I was offered SSOSA by the prosecution, under false pretenses. . . .  Carnell (prosecutor) submitted to me an offer of SSOSA in return for the guilty plea.  Trueblood insisted that it was valid, but that I could only obtain it by giving the court a "good reason."  Trueblood explicitly instructed me in how to

REPORT AND RECOMMENDATION
PAGE - 4

respond during guilty pleading questions.

GROUND THREE:  Trueblood + the court allowed an "In re Barr" claim in the plea, which was false. . . .  Trueblood insisted that the prosecutor "wants it," and that I "wouldn't get SSOSA" unless I accepted the added charge.  There were never any "more severe" charges possible, as I already faced a possible life sentence, and there was no new or other evidence.

GROUND FOUR:  Trueblood had assaulted me in court before the Judge, McKeeman. . . .  My defender grabbed me, held me, and covered my mouth with her hand firmly when I tried to motion for dismissal.  The judge ignored us and looked away.

GROUND FIVE:  It was 45 days before I was briefed by my own attorney.  Until then, stand-ins who refused to discuss my cases handled all issues, and refused to represent me.

GROUND SIX:  I was held for several hours without Miranda, while handcuffed outside my home.

GROUND SEVEN:  Officers continued to interrogate me after I asked for my attorney and ceased giving them answers.

GROUND EIGHT:  After I asked to talk to an attorney, I was not immediately, or even rather quickly, put into contact with my attorney.  I was never allowed to make any call until later the following day.  Phones in the holding cells had been broken &/or removed.

GROUND NINE:  I was held more than 6 months (six) without discovery in full.  Prosecution gave me only censored copies of accusations after 4 (four) months.

GROUND TEN:  My defender stated that witnesses had changed their stories, and one had recanted.  However, she refused to try to dismiss any charges or argue for reduced bail.

GROUND ELEVEN:  My defender refused to inform the court that I am gay, have HPV, and have herpes (HSV 1 + HSV 2.)

GROUND TWELVE:  The courts repeatedly issued continuances without proper grounds.  Trueblood refused to object.

GROUND THIRTEEN:  Trueblood threatened to keep me "in jail" forever unless I did as she instructed, and plead guilty.

GROUND FOURTEEN:  Trueblood failed to "reserve the plea," and told me "she had," leaving me to believe that I would be assured the SSOSA deal, and not be

blindly pleading guilty.

GROUND FIFTEEN:  I followed Trueblood's explicit instructions in making guilty statements to examiners.  These statements were perjurous.  I did not do such thing, at all.

GROUND SIXTEEN:  Trueblood refused to consider or introduce that I had been raped & blackmailed by H.L.  She further refused to contest H.L.'s testimony.

GROUND SEVENTEEN:  Trueblood refused to introduce that my ex fiancé had also been blackmailed by H.L.

GROUND EIGHTEEN:  Trueblood recommended the extension that I objected to, even after I refused it.

GROUND NINETEEN:  Trueblood altered the terms of my guilty plea without my knowledge.  The papers I originally signed said only "96 months," not "130 to life," and that was purportedly "only if you violate the SSOSA agreement or reoffend."

GROUND TWENTY:  Therefore, rather than agreeing to a SSOSA deal with 0 (zero) months of confinement, as I understood it; I was in reality agreeing witlessly to a virtual life sentence, without a trial.

GROUND TWENTY-ONE:  The state prosecutor intentionally utilized tactics in court which were prejudicial to justice.  It is not possible that a competent attorney could not know that offering an impossible deal, in effort to gain an improper guilty plea, is itself illegal and immoral.

GROUND TWENTY-TWO:  I have never actually harmed any person.  The charges against me are improper even as misdemeanors, being as all the testimony was tainted by interference.  "Months" elapsed between arrest & testimony, allowing ample time for coaching, and for offers and lures of payment or punishment to motivate the parents.

GROUND TWENTY-THREE:  The state failed to exercise proper discretion in dismissing my motion to reverse my plea.  It would have taken little trouble, less than all the subsequent appeals by far, to simply allow the 7.8 to be heard and judged.  And the states assertions "that he plead guilty" are a poor argument for prohibiting a CrR 7.8.

GROUND TWENTY FOUR:  The state frequently states "bald allegations" despite the facts, despite the evidence already in court, despite evidence I personally submitted, and despite having a sitting judge already clearly stated that misconduct had occurred.

REPORT AND RECOMMENDATION
PAGE - 6

GROUND TWENTY-FIVE:   Trueblood was on at least three occasions fully intoxicated, and smelled of alcohol, while representing me in court.

GROUND TWENTY-SIX:   Trueblood once met me for conference while very high.  Her pupils were dialated more than a centimeter, such that I could not see any color in her eyes.  There was only the whites, and her black pupils.  She stated that she had not been to an eye doctor nor had any eyedrops in, when I asked.

GROUND TWENTY-SEVEN:   The state appeals abused their discretion in refusing to hear such an extensively corrupted case.  There's no possible logic or excuse for blindly ignoring evidence that indicates a total miscarriage of justice.

GROUND TWENTY-EIGHT:   The state supreme abused its discretion by also refusing to consider the appeal.

GROUND TWENTY-NINE:   The state supreme erred in refusing to hear a motion for reconsideration, by intentionally ignoring my timely reply and instead looking at the time of my 2nd filing.

GROUND THIRTY:  Requests to accept the filing have been ignored as of this date, and I believe that I am done.  (All possible avenues exhausted.)  Yet I shouldn't need to be here.

GROUND THIRTY-ONE:  I have repeatedly asked to simply be let go, released, even in community custody, to complete my appeals without damage to the state.  These requests were ignored.  The state errs in not addressing such a reasonable request in a case with both judicial and prosecutorial malignance, coupled with an incompetent public defender.

GROUND THIRTY-TWO:  I was never given the constitutional right to a grand jury indictment.  This state purposefully allows the prosecutor to be judge, jury, and executioner; in that, the prosecutors arrest orders are granted without proper review, the prosecutor issues orders to police, the prosecutors issue orders to judges, the courts rubber stamp nearly all prosecution requests, and the courts issue the sentences demanded by the prosecution.  To discover that the courts then ignore any pleas for relief, that the courts still follow the dictums of the prosecution, and that any semblance of actual justice isn't possible in a kangaroo court, should be no surprise now.

GROUND THIRTY-THREE:  The state has committed severally and separately, no fewer than seven distinct RICO Act violations in my case, and the evidence suggests that Washington has done so in at least a half million cases.  Counties routinely arrest more than two or three times their populations within a few years.  It cannot be that Washington has so many criminals. Rather,   Washington   has contracts that require its prisons be kept full.

REPORT AND RECOMMENDATION
PAGE - 7

GROUND THIRTY-FOUR:  I include, in its entirety, my complaint to the U.S. Department of Justice.

GROUND THIRTY-FIVE:   I attempted to notify Trueblood that the state had, now in its possession, military files that require "proper handling."  She refused to listen.

GROUND THIRTY-SIX:   Upon arrival at Stafford Creek, I notified naval intelligence that their files are now "in the wind" due to incompetence of the state, and denied any further responsibility for the security of those files.  Fortunately, I had of necessity employed the highest known encryption methods, yet these files are now accessible to almost anyone.

GROUND THIRTY-SEVEN:    Additionally, I had warned Trueblood that the trade secrets of NWREG LLC were also at risk, and she stated that she "will not help (you) with anything like that."  NWREG LLC is a cover entity to protect top secret development of software & electronics for U.S. naval weapons.   In particular, high energy weapons are detailed, which can be considered tools of mass destruction.  Thankfully, again, much of my research was carefully encoded.

GROUND THIRTY-EIGHT:  Trueblood apparently refused to take any measures that would allow me to properly defend myself, nor "would she do so."

GROUND THIRTY-NINE:  Trueblood explicitly refused to allow me any access to my bank, to aid in protecting my children, or to aid in protecting my property as required under WA laws.

GROUND FORTY:  The state frequently altered the charges against me without my presence, or knowledge.  Annoyed sheriff officers would often remark that the charges kept changing, while in Sno. Cty. Jail.

GROUND FORTY-ONE:  Lastly, yet not least, the state did alter the times when I was able to prove that I had not been present, or culpable, in the original time frames charged.  The state continued by altering the felony dates which did span several months, without actual due cause to do so.  There was never any real justification for allowing such bold timelines, even spanning years, for a single instance of alleged action.  Instead, the state merely reworded the complaints to make it appear as a years-long or months-long offense, which was never the case, nor substantiated by any testimony that I'm aware of.

GROUND FORTY-TWO:   I was initially charged only with misdemeanors.  These were elevated to felonies without a hearing where I was represented.

(Dkt. 7 at 5-23.)

REPORT AND RECOMMENDATION
PAGE - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

<u>DISCUSSION</u>

Respondent argues in his answer to the petition that petitioner failed to exhaust any of his 42 grounds for relief and that the claims are now procedurally barred.

<u>Exhaustion and Procedural Default</u>

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted).  In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing, *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims.  *Id*.  "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d at 830.  In addition, "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the substance of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

Respondent argues that petitioner failed to properly exhaust any of his 42 habeas claims

REPORT AND RECOMMENDATION
PAGE - 9

1   because he failed to present those claims to the Washington Supreme Court.  Petitioner contends

2   that he presented all of his claims to the state courts, but the state simply decided not to hear

3   them.  The record does not support petitioner's contention.

4          As respondent correctly notes, in order to properly exhaust his federal habeas claims,

5   petitioner was required to clearly present each of his 42 claims to the Washington Supreme Court

6   as a federal constitutional claim and he was required to assert the same factual basis for each of

7   the claims there as he does here.  A review of the various documents submitted by petitioner to

8   the Washington Supreme Court indicates that petitioner failed to clearly present any of his

9   federal habeas claims to the Washington Supreme Court on the same legal and factual basis as

10  those claims are presented here.  Petitioner therefore failed to properly exhaust any of his federal

11  habeas claims.  Respondent argues that petitioner, having failed to properly exhaust certain

12  claims, would now be barred from presenting his unexhausted claims to the state courts under

13  RCW 10.73.140.

14         Pursuant to RCW 10.73.140, if a person has already filed a personal restraint petition, any

15  new petition would be barred as successive without a showing that a previous petition had not

16  been filed on similar grounds and a showing of good cause as to why those grounds were not

17  previously raised.  There is nothing in the record to support the conclusion that petitioner could

18  show good cause for not previously raising his grounds for relief in his prior petition.  As such,

19  the state courts are unlikely to entertain another petition from petitioner, RCW 10.73.140, and

20  there is a procedural default for the purposes of federal habeas review, *Coleman v. Thompson*,

21  501 U.S. 722, 735 n. 1 (1991).

22         When a state prisoner defaults on his federal claims in state court, pursuant to an

23  independent and adequate state procedural rule, federal habeas review of the claims is barred

REPORT AND RECOMMENDATION
PAGE - 10

1   unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

2   alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

3   fundamental miscarriage of justice. *Id.* at 750.

### Cause and Prejudice

5   To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show

6   that some objective factor external to the defense prevented him from complying with the state's

7   procedural rule. *Id.* at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show

8   "prejudice," the petitioner "must shoulder the burden of showing, not merely that the errors at his

9   trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

10  disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v.*

11  *Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case" may

12  the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental

13  miscarriage of justice" where a constitutional violation has resulted in the conviction of a

14  defendant who is actually innocent. *Murray*, 477 U.S. at 495-96.

15  Petitioner fails to demonstrate that any factor external to the defense prevented him from

16  complying with the state's procedural rules. Because petitioner has not met his burden of

17  demonstrating cause for his procedural default, this Court need not determine whether petitioner

18  carried his burden of showing actual prejudice. *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448

19  (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). In addition, petitioner makes

20  no colorable showing of actual innocence. Petitioner therefore fails to demonstrate that his

21  unexhausted claims are eligible for federal habeas review.

### Certificate of Appealability

23  A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

REPORT AND RECOMMENDATION
PAGE - 11

dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C.

§ 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability in this matter.

<u>CONCLUSION</u>

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition, and this action, be dismissed with prejudice, and that all of petitioner's pending motions be dismissed as moot.  This Court further recommends that a certificate of appealability be denied.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on <u>**November 14, 2014**</u>.

DATED this <u>30th</u> day of October, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 12